EDWARD H. KUBO, JR. 2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI 2286
Chief, Narcotics Section

THOMAS J. BRADY 4472
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone:  (808)541-2850
Facsimile:  (808)541-2958
Tom.brady@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR. NO. 01-00382 REJ |
| ) | |
| Plaintiff, ) | GOVERNMENT'S POSITION REGARDING |
| ) | LIMITED REMAND PROCEDURES PURSUANT |
| vs. ) | TO UNITED STATES V. AMELINE; |
| ) | CERTIFICATE OF SERVICE |
| PACKWARD KALEILANI TOELUPE ) | |
|   aka, "Pupi,"        (01),) | |
| LUIS C. DOMINGO,      (02),) | Date: April 25, 2006 |
| ) | Time: 10:00 a.m. |
| Defendants. ) | Judge: Robert E. Jones |
| _____) | |

GOVERNMENT'S POSITION REGARDING LIMITED REMAND
PROCEDURES PURSUANT TO UNITED STATES V. AMELINE

　　　　Plaintiff United States of America, through its counsel of record, Assistant United States Attorney Thomas J. Brady, hereby files its position regarding the procedures to be followed to comply with the Ninth Circuit's limited remand of this case pursuant to United States v. Ameline, 409 F.3d 1073, 1085

(9th Cir. 2005). The Government is filing this position to aid the Court in handling this unusual type of remand, and it respectfully requests that this Court follow the procedures described herein in answering the question posed by the Ninth Circuit in its limited remand.

This position is based upon the attached memorandum of points and authorities, the files and records of this case, and any evidence of arguments that may be presented at any hearing on this matter.

DATED: February 7, 2006, at Honolulu, Hawaii.

Respectfully submitted,

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

By /s/ Thomas J. Brady
THOMAS J. BRADY
Assistant U.S. Attorney

```
                IN THE UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,  )  CR. NO. 01-00382 REJ
                           )
            Plaintiff,     )  MEMORANDUM OF LAW
                           )
      vs.                  )
                           )
PACKWARD KALEILANI TOELUPE )
   aka, "Pupi,"       (01),)
LUIS C. DOMINGO,      (02),)
                           )
            Defendants.    )
_____)
```

MEMORANDUM OF LAW

**A.   Introduction**

On October 31, 2005, and November 1, 2005, the Ninth Circuit ordered a limited remand in this case as to the above-named defendants for the purpose of resentencing. The Government respectfully requests that this Court, after considering the record, the Presentence Report, the factors of 18 U.S.C. § 3553(a), and the advisory Sentencing Guidelines, impose the same sentence that it previously imposed on both Defendants Toelupe and Domingo.

**B.   Previous Sentence Imposed on Defendant Toelupe**

On March 24, 2003, Toelupe appeared before this Court for sentencing. U.S. Probation, consistent with the trial evidence, as well as the district court's findings of facts, opined that Toelupe should be held responsible for:
1) approximately 24 pounds of methamphetamine recovered from the

"Space Place" storage facility on September 7, 2001; 2) the methamphetamine recovered from the drug transactions between Toelupe and the cooperating source between the dates of July 31, 2001 and August 15, 2001; 3) the additional amounts of methamphetamine recovered from "the hiding place;" and 4) the additional amounts of methamphetamine recovered from "the corner" on September 7, 2001.  In all, Toelupe was held accountable for 11,658.3 grams of methamphetamine or "ice" which was distributed or possessed with intent to distribute by the defendant between July 31, 2001 and September 7, 2001.  PSR ¶ 52-53,60, Addendum to Presentence report; page 2A.

This Court also assessed a four level upward adjustment for Toelupe's role in the offense as well as a two level upward adjustment for obstruction of justice.  Toelupe's total offense level was assessed at 44, Criminal History Category of I, with a guideline range of life imprisonment.  PSR ¶ 99.

In sentencing Toelupe, the district court stated:

> In respect to this matter, the reality check
> is that you are a very guilty man, that it is
> you that are responsible for your conduct,
> including the Hawaiian Islands with this
> crystal methamphetamine in the millions of
> dollars, where it's you that organized groups
> of people to prey on the citizens of this
> community, to pick on the people who are on
> welfare and food stamps first, to get them
> involved with this horrible drug, to then go
> to those in the working class. . . I remember
> that very clearly that that was a modus
> operandi, that you controlled the
> distribution of the methamphetamine.  Who got

> what at what price. . .  You haven't had a
> legitimate job in years.  Yet you had
> multiple assets.  You had multiple homes.
> You lived in a very high level of existence
> for a man with no work whatsoever. . .  I
> find you to be a perjurer.  I find that you
> attempted to obstruct justice.  I find you
> are the leader.  And those are findings that
> will enhance your sentence. . .  So this is
> what I think is an appropriate sentence for
> you:  Twenty years on Count 2, 20 years to
> run consecutive on Count 16, 20 years on all
> of the remaining counts to run concurrently
> with 2 and 16, five years of supervised
> release, no fine, no restitution.[1]

March 24, 2003 transcripts.

The following day, on March 25, 2003, after hearing all of the arguments by the parties, this Court filed its Findings of Fact Order and Statement of Reasons regarding Toelupe's sentencing.  This Court found beyond a reasonable doubt that Toelupe was in possession of 24 pounds of crystal methamphetamine found at the storage facility and that he owned and controlled the substance.  The district court also re-adopted its previously filed Findings of Fact previously filed on June 21, 2002.

**C.  Previous Sentence Imposed on Defendant Domingo**

On October 4, 2002, Domingo appeared before this Court for an evidentiary hearing as to his challenges to the presentence report.  U.S. Probation, consistent with the trial

---

[1] At the trial, stipulation as to drug quality and type was insufficient as the stipulation did not have an "attribution clause."  This Court correctly restricted the penalty of all of the counts that Toelupe was convicted of to a maximum of 20 years incarceration.

evidence, determined that Domingo was actively involved in co-defendant Toelupe's drug distribution organization between at least February 2001 and September 7, 2001. Using a preponderance of evidence standard, U.S. Probation found that Domingo conducted drug transactions with the cooperating source, facilitated drug transactions between the cooperating source and co-defendant Toelupe at "the corner" apartments, and was identified in intercepted telephone conversations as an individual who collected drug proceeds and discussed the organization's drug supply. In addition, U.S. Probation found that Domingo participated in the "washing" of pound quantities of methamphetamine at "the corner" and accompanied co-defendants Toelupe and Niumata, Jr. to the "hiding place" and "the warehouse" where the organization's drugs were stored. Therefore, the aggregate 26 pounds of methamphetamine found at those locations were reasonably foreseeable to Domingo. PSR ¶ 52.

In support of the recommendations by U.S. Probation, the Government responded first by proffering Domingo's own statement to law enforcement on September 7, 2001. Domingo had stated that he had been selling drugs at "the corner" for co-defendant Toelupe for the past two years. Co-defendant Toelupe paid for Domingo's apartment at "the corner" with drugs. Domingo stated that he would pick up drugs from co-defendant

Toelupe every week and that Toelupe would set the price for those drugs. Domingo acknowledged collecting drug proceeds at "the corner" on behalf of Toelupe and that Toelupe depended on Domingo to look after "the corner" because Toelupe trusted Domingo. Domingo had seen Toelupe with pound quantities of methamphetamine in the past.

The Government's proffer concluded with the reference to co-defendants statements, trial testimonies, and exhibits which provided direct and circumstantial evidence that Domingo was a faithful and indispensable component of the Toelupe drug distribution organization who had full knowledge of the amounts of methamphetamine seized from the storage facility as well as the other sites utilized by the Toelupe drug distribution organization.

At the sentencing of Domingo, this Court stated:

> The fact that you have been involved in all of this, there is no doubt in my mind, whatsoever, that you were fully aware of the pounds of methamphetamine that was available at the warehouse and storage place; that you have full responsibility for its possession and constant distribution. You knew the purity of the drugs. You knew the amounts of the drugs. I find you fully responsible for up to the 26 pounds of drugs that were found. And, actually, that's just part of a long-term operation.

October 4, 2002 transcripts.

Later, on October 10, 2002, this Court filed its Findings of Fact and Statement of Reasons regarding Domingo's

5

sentencing.  This Court concurred with U.S. Probation that a preponderance of the evidence established that it was reasonably foreseeable to the defendant that pound quantities of methamphetamine were being stored at the "hiding place," the "corner" and the "warehouse."  However, the district court went further by specifically stating that:

> The court finds, based upon the record and **clear and convincing evidence**, the following:
>
> (A) From Mr. Domingo's own statement, taken September 7, 2001, he stated he had been selling drugs for defendant Toelupe for approximately two years after moving into Apartment F, 94-106 Pupupuhi Street (the corner); that Toelupe, aka Pupi, had asked Mr. Domingo to sell the ice for him; that he was dealing papers out of his apartment at the corner and he believed that Pat Ribuca and the Sagote brothers were also selling drugs for Pupi from that corner.
>
> (B) Mr. Domingo's own statement reflected that he would typically pick up from 10 to 15 papers per week from Pupi and that Pupi would set the price for those drugs. He also stated Pupi would pay for the rent at the corner and that he paid for the rent of all the other individuals that were distributing ice for him at the corner.
>
> (C) Mr. Domingo also stated he was instructed by Pupi to pick up the money from others at the corner and that he would be dealing up to a half an ounce of ice for approximately $1,500.00.  Further, Mr. Domingo stated that he saw Pupi with pound quantities of ice in the past.
>
> (D) From Mr. Domingo's own statement he stated that Pupi depended on Mr. Domingo to look after the corner and that Pupi trusted Mr. Domingo.

(E) Mr. Domingo was heard on a body wire with Mr. Generoso Garcia as saying that Pupi does not buy his drugs from anybody - that he cooks his own, that he gets the raw drugs from the mainland and then cooks them. He further discussed the amounts that he would be cooking with defendant Toelupe. These are the words of Mr. Domingo himself and clearly show that Mr. Domingo knew the full scope of this conspiracy, as well as the relevant conduct that included the other drugs. Mr. Domingo was part and parcel with the washing process of the methamphetamine.

(F) There is ample evidence to support reasonable inferences based on the trial testimony of several witnesses, as well as the exhibits, the full scope of Mr. Domingo's involvement in this drug organization. It is undisputed that Mr. Domingo was at the warehouse, as well as the hiding place in Waipahu.

(G) The court further finds the defendant was the right hand servant of Toelupe, that he was his lieutenant, driver and closest ally. The defendant was with Toelupe day and night, knew exactly what Toelupe was doing and Toelupe knew what the defendant was doing. Defendant was part and parcel of this massive operation. He polluted the island with crystal methamphetamine, helped wash this drug, and helped distribute the drug in vast quantities. Defendant brought horror into the lives of many, many people. Domingo preyed on those who were on welfare, those addicted and those attempting to work. Defendant has not had any legitimate source of income for years. In sum, he has been a major drug dealer, not as heavy as Toelupe, but certainly second in command of this conspiracy. The court finds there is no doubt whatsoever defendant was fully aware of the pounds of methamphetamine that were available at the warehouse, at the storage place, and that he shares full responsibility for its possession and constant distribution. He knew the purity of the drugs and he knew

> the amounts of drugs involved.  The court
> finds defendant Domingo fully responsible for
> up to the 26 pounds of drugs that were found,
> which the court recognizes is just part of a
> long-term operation.

(Emphasis added).  Indeed, this Court applied the "clear and convincing" standard in factoring acquitted conduct to Domingo's sentence.

This Court found that Domingo never admitted responsibility as to his role in the drug conspiracy count (Count 2) and that his self-serving letter to the court was disingenuous.  PSR ¶ 60.  In this Court's subsequent written findings, this Court stated:

> I find the defendant did not accept full
> responsibility for his actions in this case.
> He falsely asserts he got his drugs from
> unidentified drug dealers, when in fact his
> main source of drugs for distribution came
> from Toelupe and that he was actively engaged
> in virtually every aspect of the Toelupe
> operation and conspiracy....  The court finds
> the defendant properly was given a 0-point
> reduction at paragraph 60 for acceptance of
> responsibility.  This leads to a Total
> Offense level of 38, with a Criminal History
> Category of I, for an appropriate guideline
> range of 235 - 293 months.

On October 7, 2001, Domingo was sentenced to a term of twenty (20) years as to Count 2 of the First Superseding Indictment, pursuant to 21 U.S.C. §§ 841(a)(1) and 846; and a term of five (5) years as to each of Counts 10 through 16, to be served concurrently with each other and concurrently with the 20-year sentence imposed in Count 2.

D.  **Ninth Circuit Review and Limited Remand for Sentencing**

On October 31, 2005, and November 1, 2005, the Ninth Circuit ordered a limited remand in this case as to the above-named defendants pursuant to United States v. Ameline, 409 F.3d 1073, 1083 (9th Cir. 2005)(en banc).  An Ameline limited remand serves to enable the Ninth Circuit to determine whether this Court committed plain error when it sentenced defendant at a time before the Supreme Court held in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), that the United States Sentencing Guidelines were advisory.

To this end, the limited remand requires this Court initially to answer only a single question from the Circuit that will determine whether plain error occurred.  That question is:

> [W]hether the sentence imposed would have been materially different had the district court known that the Guidelines were advisory[.]

Ameline at 1083.  In answering this initial question, and in proceeding further depending on the answer to this question, the Government submits that the following procedures should be followed.

E.  **No New Evidence Should Be Considered in Answering the Initial Question**

The Ameline remand is a "limited" one.  Id. at 1079.  As such, this Court is to rely on the existing record of evidence introduced at defendant's original sentencing and determine whether the Court would sentence in a materially different way

9

under advisory Guidelines. The Court should not hold an evidentiary hearing, take a new allocution, or otherwise receive outside-the-record evidence in doing so. Should the answer to the Ninth Circuit's question be affirmative, a full resentencing will be warranted, but in answering the initial question from the Ninth Circuit, this Court need only determine whether the advisory-Guideline sentence would be materially different and "need not determine or express what the sentence would have been in an advisory system." Id.

### F. Defendant Need Not Be Present for the Court's Initial Determination

Because this Court is to make a legal determination based only on evidence in the record, this Court may make its decision without a hearing and without defendants' presence.[2] See Fed.R.Crim.P. 43(b)(3) ("A defendant need not be present. . . when the proceeding involves only a conference or hearing upon a question of law."); see also United States v. Romero, 282 F.3d 683, 689-90 (9th Cir. 2002) (defendant's presence not required at conference on jury instructions); United States v. Klimavicius-Viloria, 144 F.3d 1249, 1262 (9th Cir. 1998) (defendant need not be present for legal determination as to whether to protect classified material); United States v. Fisher, 137 F.3d 1158,

---

[2] On January 27, 2006, the Government made arrangements to have both Defendants Toelupe and Domingo present for resentencing on April 25, 2006.

1162-63 (9th Cir. 1998) (defendant's presence not required at pretrial hearings on issues that can be fairly adjudicated without his presence); see also Price v. Johnston, 334 U.S. 266, 285 (1948) (defendant has no right to argue his appeal or even to be present at proceedings in appellate court), overruled on other grounds by McClesky v. Zant, 499 U.S. 467 (1991).

All of the three other circuits that order post-Booker limited remands have expressly held that a defendant's presence is not required for the district court's initial determination on the limited remand.  See United States v. Crosby, 397 F.3d 103, 120 (2d Cir. 2005); United States v. Paladino, 401 F.3d 471, 484 (7th Cir. 2005); United States v. Coles, 403 F.3d 764, 770 (D.C. Cir. 2005).  While Ameline did not expressly hold that a defendant's presence is not required for the determination on the limited remand, it did state that the Ninth Circuit was following "the approach adopted by our colleagues on the Second, Seventh, and D.C. Circuits."  Ameline, 409 F.3d at 1079.  Moreover, the Ninth Circuit implicitly indicated that defendants' presence is not required by noting that the defendants should be present for the full resentencing in the event it occurs.  Id. at 1081.

**G. The Court Should Invite the Written Views of Counsel**

The Ninth Circuit stated that this Court should invite argument from counsel as to whether defendants' sentence would have been materially different from what it was under the

11

mandatory guidelines. Id. at 1085. Per Section A, above, counsel should not submit or rely on new evidence in making their arguments.

### H. If the Court Answers Negatively, the Court Must Provide an Explanation

Should this Court conclude that it would **not** impose a sentence materially different from the earlier sentence, this Court must "place on the record a decision not to resentence, with an appropriate explanation." Id. at 1085. It would be appropriate, for example, for this Court to state that it has considered the evidence in the record, the written views of counsel, the advisory Sentencing Guidelines, and all the factors provided in 18 U.S.C. § 3553(a) in determining that defendants' sentence would not be materially different under advisory guidelines. The Court may also choose to further explain why it would not impose a materially different sentence. A party may appeal from this determination. Id.

### I. If the Court Answers Affirmatively, the Court Must Conduct a Full Resentencing

Should this Court conclude that it **would** impose a materially different sentence, the original sentence must be vacated and this Court must schedule a full resentencing. Id. at 1085. This resentencing should be handled in the same manner as this Court would handle any resentencing, including receiving a new PSR if the Probation Office wishes to submit one; receiving

evidence and hearing written and oral argument from the parties; and having defendants present for a sentencing hearing with an opportunity to allocute.

### J. Sentence within Guideline Range is Presumptively Reasonable

The Ninth Circuit has recently held that while the guidelines are advisory, a sentence that falls within a properly calculated guideline range is presumptively reasonable. See United States v. Guerrero-Velasquez, No. 05-30066, 2006 WL 133494, at *1 n.1 (9th Cir. Jan. 19, 2006). In this case, this Court has properly calculated the guideline range for both Defendants Toelupe and Domingo, and therefore, presumed to be reasonable.

### K. Facts Supporting Consecutive Sentences Need Not By Found by a Jury Nor is Notice to Defendant Toelupe Required Before this Court Imposes Consecutive Sentences for Counts 2 and 16

Any argument that the imposition of consecutive sentences under 18 U.S.C. § 3584 on the basis of judge-found facts violates a defendant's Six Amendment right has been rejected by the Ninth Circuit in United States v. Fifield, 432 F.3d 1056 (9th Cir. 2005). As in Fifield, the Guidelines do not call for concurrent sentences in Defendant Toelupe's case, therefore, the imposition of consecutive sentences is not a departure requiring notice pursuant to Rule 32 of the Federal Rules of Criminal Procedure.

In the alternative, by its previous sentence imposed on March 24, 2003, this Court has provided Defendant Toelupe adequate notice that it is contemplating consecutive sentences for Counts 2 and 16.  The specific grounds on which this Court is contemplating the consecutive sentences were previously articulated by this Court and grounded in the factors of 18 U.S.C. § 3553(a).

**L.  Conclusion**

The United States submits that after consideration of the record, the Presentence Report, the factors of 18 U.S.C. § 3553(a), and the advisory Sentencing Guidelines, the Court should impose the same sentence that it previously imposed on both Defendants Toelupe and Domingo.

DATED: February 7, 2006, at Honolulu, Hawaii.

Respectfully submitted,

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


By /s/ Thomas J. Brady
   THOMAS J. BRADY
   Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

       I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known address:

<u>Served Electronically through CM/ECF</u>

| | | |
|---|---|---|
| DAVID F. KLEIN, ESQ. | dk@thedefense.com<br>dfklein@gmail.com | February 7, 2006 |

Counsel for Defendant
PACKWARD K. TOELUPE


<u>Served by First Class Mail</u>:

DEANNA S. DOTSON, ESQ.                           February 7, 2006
P.O. Box 700953
Kapolei, HI   96709-0953

Counsel for LUIS C. DOMINGO

<u>Served by Hand-Delivery</u>:

U. S. PROBATION OFFICE                            February 7, 2006
U.S. Courthouse, Room C-110
300 Ala Moana Boulevard
Honolulu, HI   96850

       DATED: February 7, 2006, at Honolulu, Hawaii.

                                          /s/ Shelli Ann H. Mizukami