IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 01-00382 REJ |
| | (Civil No. 09-00194) |
| v. | |
| PACKWARD KALEILANI TOELUPE, | OPINION AND ORDER |
| aka "Pupi"; | |
| | |
| Defendant. | |

On May 10, 2010, pursuant to 28 U.S.C. § 2255, defendant Packward Kaleilani Toelupe filed a Motion to Vacate, Set Aside, or Correct Sentence (# 440). I have considered defendant's extensive submissions and the government's response, and conclude that defendant's arguments are without merit and that he is not entitled to a hearing or the relief requested. The motion is, therefore, denied.

PROCEDURAL BACKGROUND

On June 14, 2002, following a nine-day trial, a jury convicted defendant of conspiracy to possess with intent to distribute and for distributing 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 2); aiding and abetting the distribution of methamphetamine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1) (Count 16); possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Counts 17 and 21); and possession with intent to distribute and distributing 5 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Counts 18, 19, and 20). The jury

EXHIBIT "A"

acquitted defendant of Counts 1, 3 through 7, 10 through 15, 22, and 24 through 26 of a 27-count First Superseding Indictment filed on February 14, 2002.[1]

On March 24, 2003, this court sentenced defendant to 20 years of imprisonment as to Count 2 and 20 years of imprisonment as to Count 16, to run consecutively to Count 2. On Counts 17, 18, 19, 20, and 21, the court sentenced defendant to 20-year terms, to run concurrently with each other and with the 20-year sentence imposed in Count 2, for a total sentence of 40 years of imprisonment.

Defendant appealed, and on June 17, 2004, the Ninth Circuit Court of Appeals affirmed the conviction and sentence. United States v. Toelupe, 101 Fed. Appx. 686 (9th Cir. 2004). On August 5, 2004, however, the Ninth Circuit withdrew the submission of the case pending resolution of the effect of Blakely v. Washington, 542 U.S. 296 (2004). On March 7, 2005, the Ninth Circuit ordered supplemental briefing on the issues raised by the Supreme Court decision in United States v. Booker, 543 U.S. 220 (2005). Ultimately, in October 2005, the Ninth Circuit remanded the case to this court for consideration of defendant's sentence in light of United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005)(en banc).

On April 25, 2006, following briefing and oral argument, this court took under advisement whether to (1) abide by the original sentence or (2) order a new sentence. On May 30, 2006, the court issued its Order on Remand regarding defendant's sentence. The court calculated the advisory Guidelines offense level in the same fashion as it did in the original sentencing, and again determined that a sufficient, but not greater than necessary, sentence for

---

[1] The court dismissed Counts 8, 9, and 23, and Count 27 was resolved by stipulation.

PAGE 2 - OPINION AND ORDER

defendant was 40 years of imprisonment. See 18 U.S.C. § 3553(a). Defendant again appealed his sentence, and on October 10, 2007, the Ninth Circuit again affirmed it. United States v. Toelupe, 250 Fed. Appx. 808 (9th Cir. 2007). On April 28, 2008, the Supreme Court denied defendant's petition for writ of certiorari.

## DISCUSSION

Defendant alleges seven grounds in support of his motion, several of which contain overlapping allegations. His claims are summarized as follows:

1.   Ineffective assistance of trial counsel and trial court error pertaining to defendant's belief that a "special verdict" form was required to permit the jury to determine drug quantity (Ground One);

2.   Ineffective assistance of trial counsel, prosecutorial misconduct, and trial court error pertaining to the handling of body wire tape evidence (Grounds Two and Six);

3.   Ineffective assistance of trial counsel pertaining to defendant's testimony and counsel's closing argument (Ground Three);

4.   "Structural error" pertaining to the special verdict, body wire tapes, wire tap evidence, and "pervasive judicial bias" (Ground Four);

5.   Ineffective assistance of trial counsel in failing to move for a new trial and in failing to seek recusal of the trial judge before sentencing (Ground Five); and

6.   Ineffective assistance of trial and appellate counsel pertaining to the court's findings of fact and conclusions of law, the prosecutor's alleged "vouching for witnesses," and improper handling of the "acquitted conduct" arguments with respect to sentencing (Ground Seven).

PAGE 3 - OPINION AND ORDER

All of defendant's arguments concerning his sentence, i.e., the lack of a special verdict, the failure to clarify the alleged inconclusive jury verdict, the use of acquitted conduct to enhance his sentence, and this court's reliance on extra-verdict factual findings are foreclosed by not one, but two Ninth Circuit decisions finding his arguments to be without merit and affirming his sentence as imposed. See generally United States v. Toelupe, 101 Fed. Appx. 686 (9th Cir. 2003); United States v. Toelupe, 250 Fed. Appx. 808 (9th Cir. 2007). This court cannot and will not revisit those issues. See United States v. Currie, 589 F.2d 993, 995 (9th Cir. 1979) ("Issues disposed of on a previous direct appeal are not reviewable in a subsequent § 2255 proceeding."); United States v. Hayes, 231 F.3d 1132, 1139 (9th Cir. 2000) ("When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as a basis for a subsequent § 2255 petition."). Although defendant attempts to place a different "spin" on the issues, focusing on the purported need for a special verdict and a need to clarify the alleged inconclusive jury verdict, the thrust of his argument is the same as he has made before: that the court violated his constitutional rights by using the acquitted conduct in Count 22 to enhance his sentence. Defendant's request to have this court again consider these issues and/or evaluate the effectiveness of trial and appellate counsel in handling them is not well-taken and is denied.[2]

Similarly, defendant's arguments concerning the wiretap evidence, the body wire tapes, the alleged prosecutorial misconduct in questioning defendant and other witnesses, and the

---

[2] In view of the Ninth Circuit's rulings, defendant cannot show, as he must, that there is a "'reasonable probability'" that his trial and appellate counsel's alleged "deficient performance prejudiced the defense." United States v. Withers, 618 F.3d 1008, 1019 (9th Cir. 2010) (quoting Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984)).

PAGE 4 - OPINION AND ORDER

court's alleged interference with defense counsel's direct examination of defendant and closing argument were raised on direct appeal and rejected by the Ninth Circuit. United States v. Toelupe, 101 Fed. Appx. at 689-90 (wiretap evidence and prosecutorial misconduct), and 690 (interference with direct examination and closing argument; body wire tapes).[3] Consequently, I will not revisit these arguments, which are not well-taken and lack merit. With respect to his current claim of ineffective assistance of counsel concerning these issues, see footnote 2, supra.

This brings me to defendant's remaining claims. In Ground Three, defendant alleges that his trial counsel was ineffective because during closing argument, he described defendant as "not being a nice guy" who "beats people up" and "extorts and scares people." Motion, p. 8, Ground Three. That description, however, is consistent with defendant's own trial testimony. Defendant testified that from 1996 until his arrest in 2001, he offered protection to people, who would pay him in cash. Tr. Vol. 7, pp. 122-23. He testified that he was an experienced boxer and kickboxer, that he had "ripped off" money from drug-dealers, in excess of $100,000 in one year alone, id., p. 125, and beat someone badly enough to put him in the hospital. Id., p. 205. Defendant denied, however, that he had been involved in any drug distribution with his co-defendants or cooperating sources in the case. In keeping with defendant's own testimony and in a trial strategy designed to downplay defendant's involvement in any drug activity, defense counsel argued in closing that:

---

[3] Indeed, with respect to the body wire tapes, although defendant now asserts that he did not agree to the reading of the transcripts in lieu of playing the tapes, the Ninth Circuit correctly observed that "[t]he parties had agreed that transcripts of the conversations could be read to the jury in lieu of playing the actual recordings," an observation consistent with what actually occurred in the courtroom. United States v. Toelupe, 101 Fed. Appx. at 690; see also Tr. Vol. 5, pp. 213-14, 216-17.

PAGE 5 - OPINION AND ORDER

> Now, I'm not telling you that [defendant]'s a nice guy. I don't know what he did in 1996, 1997, 1998, 1999, 2000, and 2001. But I don't think he's a very nice guy. I think he beats people up. I think he extorts people. I think he scares people. He's a scary guy. But that doesn't mean he's a huge drug dealer in a continuing criminal enterprise.

Tr. Vol. 8, p. 170.

In his Declaration submitted in response to defendant's present motion, trial counsel Mark Zenger explains his strategy as follows:

> From the outset, I told [defendant] that it would be difficult if not impossible to raise a reasonable doubt that he was not involved in drug trafficking at all, but that the defense might be able to raise a reasonable doubt that he was . . . involved in drug trafficking only on a local level in relatively small amounts and not on an international or interstate level in relatively large amounts. He agreed with my assessment and we proceeded to trial on that basis.
>
> * * *
>
> [T]he overall defense strategy was to raise a reasonable doubt that [defendant] was involved in drug trafficking only on a local level in relatively small amounts and not on an international or interstate level in relatively large amounts.
>
> During the trial, there was a substantial amount of evidence presented that showed that [defendant] was in fact involved in drug trafficking only on a local level in relatively small amounts and that he was at times both violent and threatening. His appearance and demeanor at trial bolstered that evidence in my view.
>
> Prior to my closing argument, I went over it with [defendant] and he was in agreement with what I proposed to present. I told him that I was going to portray him and his co-defendants as well as violent and threatening small time crystal methamphetamine dealers and he evidenced his agreement with that strategy.

Declaration of Mark Zenger, ¶¶ 12, 21-23. Defendant asserts that Zenger's statements are "untrue," see Defendant's Reply Brief, pp. 7, 10-11, but as between the two, I find Zenger's statements to be credible and in keeping with my observation of his skills at trial, and I find, as I have before, that defendant lacks credibility. See United States v. Toelupe, CR No. 01-00382

PAGE 6 - OPINION AND ORDER

(Findings of Fact, June 21, 2002 (# 256)("[D]efendant Toelupe did obstruct justice by testifying falsely during trial. He committed perjury and false swearing in testifying.").

To establish ineffective assistance of counsel, defendant must show that Zenger's representation "'fell below an objective standard of reasonableness,' and that there is a 'reasonable probability' that the deficient performance prejudiced the defense." United States v. Withers, 618 F.3d 1008, 1019 (9th Cir. 2010) (quoting Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984)). A "'reasonable probability'" in this analysis is "'a probability sufficient to undermine confidence in the outcome.'" Matylinsky v. Budge, 577 F.3d 1083, 1091 (9th Cir. 2009)(quoting Strickland, 466 U.S. at 694).

Judicial inquiry into counsel's performance "must be highly deferential," and strategic choices as to how to defend a case are "virtually unchallengeable." Strickland, 466 U.S. at 689, 691. As the Strickland Court explained:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Strickland, 466 U.S. at 689 (internal quotations and citations omitted).

In this case, the jury acquitted defendant of Count 1, engaging in a continuing criminal enterprise, and, as defendant repeatedly has pointed out, acquitted him of the most serious charge, Count 22 - possession with intent to distribute approximately 26 pounds of methamphetamine. Counsel obtained this result despite what the Ninth Circuit observed to be:

> overwhelming evidence of his guilt, including numerous intercepted conversations in which he is heard discussing his methamphetamine distribution and processing operations, his confession to federal agents that he was a drug dealer who possessed pounds of methamphetamine, as well as the testimony of witnesses who described [defendant's] organization, importation, and distribution activities in substantial detail.

United States v. Toelupe, 101 Fed. Appx. at 690. In sum, I conclude that defendant has failed to meet his heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy, Matylinsky, 577 F.3d at 1091, and reject this claim of ineffective assistance of counsel.[4]

Defendant's remaining contentions merit little discussion. He contends that his trial counsel was ineffective in failing to move for a new trial and in failing to seek this court's recusal before sentencing (Ground Five). Defense counsel did an exceptional job of advocating for this defendant, gaining acquittal on most of the charges in the Superseding Indictment, and in any event I would have denied any motion for a new trial as without merit. As Zenger explains in his Declaration, "[a]fter the verdict came back from the jury, [defendant] repeatedly told me words to the effect that I had done an extraordinarily good job of defending him and that he was very happy with what I had done for him during the course of trial," and "[h]e did not instruct me or ask me to file a motion for a new trial." Declaration of Mark Zenger, ¶¶ 24-25. Moreover, in his professional judgment, Zenger determined "there were no grounds for a new trial." Declaration

---

[4] Defendant also fared quite well even in his sentencing. As this court observed in the Order on Remand, the sum of the statutory maximums for all of the offenses for which he was convicted amounted to life plus 180 years. United States v. Toelupe, CR No. 01-00382 (Order on Remand, May 30, 2006)(# 391), p. 1 n.1; see also United States v. Toelupe, 250 Fed. Appx. 808, 811 (9th Cir. 2007) ("Toelupe could have received a much higher sentence - up to life plus 180 years - if the district court had chosen to give him the maximum sentence for all the counts on which he was convicted and to run the terms consecutively.")

PAGE 8 - OPINION AND ORDER

of Mark Zenger, ¶ 26. It was only after defendant learned that the court would consider the acquitted but relevant conduct in sentencing that defendant asked Zenger to withdraw as counsel. Id., at ¶ 25.

With respect to trial counsel's failure to ask this court to recuse itself before sentencing, I likewise would have denied the motion, for the same reasons on the merits that I explained in my recent ruling on his Petition for Recusal (# 450). As I stated there,

> The remainder of the statements on which Toelupe rests his present motion were comments I made outside the presence of the jury after hearing all the evidence adduced at trial. As a general rule, questions about a judge's impartiality must stem from "extrajudicial" factors, that is, from sources other than the judicial proceeding at hand. Liteky v. United States, 510 U.S. 540, 554 (1994); Pau v. Yosemite Park and Curry Co., 928 F.2d 880, 885 (9th Cir. 1991). My comment during sentencing that Toelupe was an "evil man" does not demonstrate "a clear inability to render fair judgment," Liteky, 510 U.S. at 551, rather, it reflected the opinion I formed of his crimes based on established facts, which proved that Toelupe was engaged in a large illegal drug conspiracy responsible for flooding the Hawaiian communities with large amounts of methamphetamine. Similarly, my comments during the discussion of jury instructions merely reflect the opinions I formed after listening to the evidence. Toelupe has not presented anything by way of affidavit or otherwise that establishes that my opinions about him arose extrajudicially or that my comments "display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky, 510 U.S. at 555; see also United States v. Monaco, 852 F.2d 1143, 1147 (9th Cir. 1988) (comments by judge reflecting outrage at crime and failure of parties to take responsibility did not demonstrate pervasive bias); Noli v. C.I.R., 860 F.2d 1521, 1528 (9th Cir. 1988) (comments by judge revealing that he was upset with a party's conduct did not require recusal).
>
> In sum, Toelupe received a fair trial, was convicted by a jury of his peers, and was given a legal and appropriate sentence for his crimes.

United States v. Toelupe, CR No. 01-00382 (Order, May 27, 2010)(# 457).

Thus, defendant has failed to establish a "'reasonable probability' that "'but for'" any deficient performance by trial counsel in failing to seek a new trial or recusal, '"the result of the

proceeding would have been different.'" Matylinsky, 577 F.3d at 1091 (quoting Strickland, 466 U.S. at 694).

Defendant's final contention is that several aspects of this court's handling of the trial amounted to "structural error and judicial bias;" specifically, that not asking the jury to clarify the verdict, not playing the body wire tapes, and denying a defense motion to exclude the wiretap evidence demonstrate "pervasive judicial bias" and structural error (Ground Four). To the extent that these arguments are not otherwise precluded by Ninth Circuit rulings or my own rulings in this opinion, they lack merit. Structural error, as such, exists only in situations in which the complained of conduct "'affect[s] the framework in which the trial proceeds,'" in other words, violates the right to a public trial free of error of constitutional dimensions. See United States v. Withers, 618 F.3d at 1018 (quoting Arizona v. Fulminante, 499 U.S. 279, 310 (1991)). For all the reasons discussed above, defendant has failed to establish any error amounting to a "structural error" of constitutional dimensions.

## CONCLUSION

Defendant's Motion to Vacate, Set Aside, or Correct Sentence (# 440) is without merit and is DENIED and this matter is dismissed with prejudice. Any other pending motions are denied as moot.

DATED this 25th day of October, 2010.

/s/ Robert E. Jones
ROBERT E. JONES
U.S. District Judge

PAGE 10 - OPINION AND ORDER