PACKWARD KALEILANI TOELUPE
Reg. No. 88240-022
FCI BIG SPRING
1900 SIMLER AVE
BIG SPRING, TX 79720
Appearing Pro Se

**ORIGINAL**

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
JAN 04 2021
at 1 o'clock and 10 min. P M
MICHELLE RYNNE, CLERK Jr

Received By Mail
Date JAN 04 2021

Mailed On
Date 1/5/2021 JO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | DC No. CR-01-00382-REJ |
| Plaintiff, | Hawaii (Honolulu |
| v. | |
| PACKWARD KALEILANI TOELUPE, | |
| Defendant. | |

MOTION FOR COMPASSIONATE RELEASE

Defendant Packward Kaleilani Toelupe, Appearing Pro Se, Hereby Moves this Honorable Court for Compassionate Release pursuant to 18 U.S.C. §3582 (c)(1)(A) and The CARE Act, Pub. L. No. 116-136 (Mar. 27, 2020). In support thereof, he provides the following:

I. INTRODUCTION

Mr. Toelupe was charged in a "multiple-count" and "multiple-defendant" indictment. After a jury trial, Mr. Toelupe was acquitted of several of the most serious counts in the indictment, including an organizer of a continuing criminal enterprise and substantive count that alleged possession of "26 pounds of methamphetamine. The sentencing court found Mr. Toelupe responsible for the acquitted conduct and sentenced him to 40 years imprisonment.

(1-8)

Mr. Toelupe was sentenced on March 24, 2003. He has been in custody since Sept. 7, 2001. His projected release date is July 13, 2036.

Mr. Toelupe is 59 years old Samoan pacific islander from Hawaii. He had never had any of the health problems that has been identify by CDC, except he was being monitored for "highblood pressure" in the beginning of the year 2020.

In the beginning of this pandemic, Mr. Toelupe was notified by his counselor of his facility that he has a slight possibility that he might be select for "home confinement." The following week the criteria for home confinement changed and he never heard from his counselor or the notification anymore. When the virus spread through this institution (FCI BIG SPRING), they put out a memo to the inmates to file their own motions for compassionate release through procedural channels.

This past August of 2020, five inmates and six staff members of FCI BIG SPRING were confirmed cases of the covid-19. By September 2020, it was reported that over three hundred inmates were infected. Mr. Toelupe's Unit still was not infected yet. Then at the ending of September, 2020, Mr. Toelupe somehow contracted the virus, and was confirmed on Oct. 29, 2020. (See Medical Rpt.)

Mr. Toelupe asserts that social distancening is impossible in FCI BIG SPRING, where bed bunks are less than four feet apart. Inmates live crowded conditions, inadequate ventilation with no walls to seperate them.

(2-8)

Mr. Toelupe was quarantine for over 21 days. He had lost over 20 pounds. As of now Mr. Toelupe feels he's not 100% recovered yet. With the threat of the second wave of this virus and no telling when the vaccine arrives, it's just a matter of time before it spreads again. Mr. Toelupe respectfully asks this Court to grant him compassionate release and for him to serve the remainder of his sentence in home confinement.

## II. PROCEDURAL STATUS

Mr. Toelupe submitted a request with the warden of FCI BIG SPRING for compassionate release because of the above mentioned health risk on Nov. 16, 2020. After 30 days, Mr. Toelupe recieved a response from the warden on Dec. 21, 2020 in the mail dated on the 17th of Dec. 2020. (copy of response attached.)

## III. COMPASSIONATE RELEASE

This Court is familiar with the FIRST STEP ACT signed by President Trump on Dec. 21, 2018. Among the changes in the law, Congress amended the provision on compassionate release at 18 U.S.C. § 3582(c)(1)(A)(i). The law provides the sentencing judge with jurisdiction to consider a defense motion for reduction of sentence based on extraordinary and compelling reasons whenever the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau Of Prisons to bring a motion on the defendant's behalf, or after the lapse of 30 days

from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A); see also First Step Act only the Director of the Bureau Of Prisons had the authority to file a motion for compassionate release.

This Court has discretion to reduce the term of imprisonment imposed in this case based on § 3582(c)(1)(A)(i), which states in relevant part that the court "may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent they applicable, if it finds that... extraordinary and compelling reasons warrant such a reduction..."

A. Exhaustion Of Administrative Remedies

As noted above, normally the Court cannot consider a compassionate release motion filed by the defendant unless the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau Of Prisons to bring a motion on the defendant's behalf," or after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582 (c)(1)(A). Mr. Toelupe made a request on Nov. 16, 2020, to the warden of his facility. He received a response over more than 30 days, on Dec. 21, 2020 dated Dec. 17, 2020. (copy attached) Mr. Toelupe has met the exhaustion requirement.

(4-8)

## B. COVID-19 Provides an Extraordinary and Compelling Reasons for Compassionate Release.

The compassionate release statute does not expressly define or limit what constitute an "extraordinary and compelling reason for a sentence reduction. Black's Law Dictionary, however, defines extraordinary as beyond what is usual, customary, regular, or common," (11th ed. 2019). It's definition of "compelling need, is one so great that irreparable harm or injustice would result if [the relief] is not [granted]." The present global pandemic is a quintessential extraordinary circumstance beyond what most Americans have experienced in their lifetimes. Thus this Court is authorized to consider that the combination of circumstances provide extraordinary and compelling reasons for Mr. Toelupe's immediate release.

According to health experts, incarcerated individuals are at special risk of infection, given their living situations, and may also be less able to participate in proactive measures to keep themselves safe; crowding, inadequate ventilation, and security issues all contribute to the spread of infectious disease in jails and prisons. Mr. Toelupe is among those identified by Center for Disease Control (CDC) who experienced the severe complications of the virus because the failure of the facility to adjust or change the inmates living situations and conditions. However, as a BOP inmate at FCI Big Spring, as he noted before, it is

(5-8)

impossible to follow the CDC's recommendations in this facility because there is no social distanceming, the crowded living situations, the inadequate ventilations, and security issues. His exposure to the virus is the failure of this facility (FCI BigSpring) to secure and protect the inmates. This Court has discretion to determine that this added risk of serious illness from the unprecedented global pandemic, together with positive cases among staff at FCI BIGSPRING, and all of the other relevant factors in this case, presents an extraordinary and compelling basis for sentence reduction.

When extraordinary and compelling reasons are established, the Court must consider the relevant sentencing factors in § 3553(a) to determine whether a sentence reduction is warranted 18 U.S.C. § 3582(c)(1)(A)(i). Under Pepper v United States, 562 U.S. 476, 490-93 (2011), the Court can, and indeed must, consider post-offense developements under § 3553(a). Mr. Toelupe completed some educational courses, since he's been incarcerated. He has camp security level, and is considered a minimum risk both for potential violence and general recidivism risk per the BOP's Male Pattern Risk Score. Mr. Toelupe also had no disciplinary infractions for the last five years.

Here the overiding factor under § 3553(a) that was not present at the time of

sentencing is the covid-19 pandemic and the serious risk it presents. Although the circumstances of the present offense qualified Mr. Toelupe for the sentence of imprisonment that this Court imposed, the sentencing purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness. In fact the eighth amendment's prohibition on cruel and unusual punishment includes unreasonable exposure to dangerous conditions in custody. (See Helling v. Mckinney, 509 U.S. 25, 28 (1993); see also Wallis v. Baldwin, 70 F.3d 1074, 1076 (9th Cir. 1995) and Brown v. Mitchell, 327 F. Supp. 2d 615, 650 (E.D. Va. July 28, 2004).

The totality of the circumstances demonstrate that reducing Mr. Toelupe's sentence to time served to be followed by a term of home confinement as a condition of supervised release, may be considered "sufficient, but not greater than necessary to serve the purposes of sentencing under § 3553(a)]. Mr. Toelupe gave his brother's home address in Colorado for his home release address on the first slight possibility notification for home confinement by FCI BIG SPRING OR THE BOP.:

   DUANE A. M. TOELUPE     PH#(720) 876-8202
   6244 BRANTLY CT          (720) 876-8300
   Castle Rock, Co 80104

For all the above-mentioned reasons, the defendant respectfully requests that this Honorable Court grant him a compassionate release.

(7-8)

Dated: December 29, 2020       Respectfully Submitted,

*Packward K. Toelupe*
PACKWARD KALEILANI TOELUPE, Pro Se

TOELUPE, Packward Kaleilan
Reg. No.: 88240-022

### Response to Inmate Request to Staff

This is in response to your Inmate Request to Staff dated November 16, 2020, which was received in this office on December 11, 2020.

You are requesting a compassionate release/reduction in sentence (RIS) based on extraordinary or compelling circumstances.

Title 18 of the United States Code, section 3582(c)(1)(A), allows a sentencing court, on motion of the Director of the BOP, to reduce a term of imprisonment for extraordinary or compelling reasons. BOP Program Statement No. 5050.50, <u>Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)</u>, provides guidance on the types of circumstances that present extraordinary or compelling reasons, such as the inmate's terminal medical condition; debilitated medical condition; status as a "new law" elderly inmate, an elderly inmate with medical conditions, or an "other elderly inmate"; the death or incapacitation of the family member caregiver of the inmate's child; or the incapacitation of the inmate's spouse or registered partner. Your request has been evaluated consistent with this general guidance.

In order to qualify under the "new law" elderly inmate criteria, you must be 70 years of age or older, and have served 30 years or more.

In order to qualify under the elderly inmate criteria, you must be 65 years of age or older, and have served the greater of 10 years or 75% of your sentence.

In order to qualify under the terminal medical condition criteria, you must be diagnosed with a terminal, incurable disease and whose life expectancy is 18 months or less.

You do not present any extraordinary or compelling reasons stated above. You are 59 years of age, do not have a terminal, incurable disease with a life expectancy of 18 months or less, and you do not have the death or incapacitation of the family caregiver of your child, or the incapacitation of your spouse or registered partner.

As a result, you are not eligible for compassionate release/reduction in sentence (RIS) consideration at this time.

In order to be considered for home confinement based on COVID-19, you must have a PATTERN score of Minimum. Although your PATTERN score reflects Minimum, the length of time remaining on your sentence, coupled with the severity of your current offense, warrants an abundance of caution. As a result, you are not eligible for home confinement consideration based on COVID-19.

The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, your concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence. Accordingly, your request is denied at this time.

I trust this addresses your concern.

_____          12-17-20
R. Marques                               Date
Warden

Nov. 16, 2020

Submitted to Prison Staff on:
Nov. 16, 2020

Dear Warden Marques:

My name is Packward Kaleilani Toelupe and my register No. is: 88240-022. I am writing to respectfully request that I'd be considered for an early release from Prison under the Compassionate Release Program, under 18 U.S.C. § 3582 (c)(1), and hope that you treat this as a formal request for Home Confinement or reduction in sentence.

It never crossed my mind if I'd be qualified for candidate of Compassionate Release, even when my Counselor Molina gave me a cop-out notice, that I have the slightest possibility to be chosen for Home Confinement. I have been incarcerated since Sept. 7, 2001. I am currently 59 years old. I have been sentence to 40 years. My projected release date is July 13, 2036. I started at the U.S. Penitentiary Florence Colorado. I did 6 years there, from 2003 to 2009. My security level dropped and BOP send me to Medium High Security in Three Rivers, Texas. I served seven years there, from 2009 - 2016. I arrived in Big Spring on Dec. 2016. I've been incarcerated for 19 years 2 months and 9 days and counting with 16 more years to go. I have served half of my 35 years with good time. Next year 2021 on Sept. 7, I would serve half of my full sentence without good time. On May 17, next year I would be 60 years old.

Since I have been incarcerated I never had any serious medical treatment other than the (→ next page)

common cold, flu or allergies, until this year I was being monitered for high blood pressure. Then I got sick one week before I got tested possitive for covid-19. At first, I thought it was just a common cold or the flu, because I always get it at this particular time in the changing of the seasons, from Autumn to winter. Especially when I forget to take the flu shot.

I was sent to Sunrise 3, range 3, from Sunset 3, range 3 with my property (four duffle bags and a mattress) while I was already sick. That there I believe is where it got worst. It was the moving that done more damage to me during my experience with covid-19.

I spend over 21 days in Low VT in quarantine try to recover. Now I'm at Sunset-1, range-1 in the recover Unit recovering. I came out of Quarantine on Oct. 29, 2020. I don't feel I'm 100% well yet, but feel I'm recovering. Now I'm Pre-Existence to covid-19 and I'm at risk of complications from Covid-19 because my X-ray says that I have a black spot in my lungs that is a possibility for covid-19.

Based on the information above, given my personal circumstances and the Covid-19 pandemic, I pray that you consider me for early release under the Compassionate Release Program. I hope that you treat this as a formal request for Home Confinement or reduction in sentence. If by any reason that you feel I'm not qualified, I respectfully request next

that I be transferred to Englewood FCI Colorado where my son lives with my brother and his family only about 45 minutes away from the Institution. I am from Hawaii, and it's difficult for my family to visit me in Texas because it's too far.

Thank You for your Time and consideration.

Packward Kaleilani Toelupe, Register No. 88240-022

*Packward K. Toelupe*